GARB, P.J.,
The issue to be decided herein is whether a judgment secured *221 against the owner of property sold at tax sale becomes a lien against that property prior to the confirmation of the sale and the delivery of the deed from the tax claim bureau to the successful bidder. The question is a curious one apparently never decided in Pennsylvania, for obvious reasons. We doubt that great numbers of people wait breathlessly for the determination.
The facts are agreed upon. On November 6, 1987, the Tax Claim Bureau of Bucks County sold the subject premises at 180 Harrison Avenue, Middle-town Township in the regularly conducted upset sale. The successful bidder was one Jonathan Lax who subsequently assigned his bid. The named defendants herein were the owners of the property at least up to the date of that sale. On January 21, 1988, Fidelity Bank obtained a judgment against Birtell in this county. Subsequently thereto, the Travelers Mortgage Services Company foreclosed upon the property. Birtell was the mortgagor. Pursuant thereto, a sheriff’s sale was held with respect to that foreclosure. One Frederick Betz Jr. was the successful bidder at the sheriff’s sale. The order confirming the tax sale was entered by this court on Februaiy 23, 1988. Betz received a deed to the property by the sheriff on February 24, 1988.
The matter comes before us on exceptions to the sheriff’s schedule of distribution. The question is whether the fund held by the sheriff as against the asserted lien of the Fidelity Bank should be paid to the bank to satisfy that lien or to Lax’s assignee. Lax’s assignee asserts that claim based upon the assertion of his rights as a result of Lax’s successful bid at the tax sale. Fidelity Bank asserts its claim *222 based upon an alleged lien upon the property as a result of its judgment against Birtell subsequent to the tax sale. The parties have posed the question as being whether Lax became the owner of the property as a result of his successful bid at the time that the gavel knocked the property down to him. Whether or not he became the “owner” for all purposes is not necessary to our decision. We do hold that he is entitled to this fund held by the sheriff.
Section 607 of the Real Estate Tax Sale Law, the Act of July 3, 1986, P.L. 351, no. 81, §29, 72 P.S. §5860.607, provides that it shall be the duty of the bureau, not later than 60 days after a sale was held, to make a consolidated return to the court of common pleas of the county setting forth a brief description of the property, the name of the owner in whose name it was assessed, the name of the owner at the time of sale, to whom notice by mail was given, a reference to the record of the tax claim, the time when the newspapers to which the advertisement for sale was made, the time of sale, the name of the purchaser, the price for which each property was sold or that no bid was made equal to the upset price. This section then provides for exceptions to the sale, and if none are made, or those which are made are disposed of, the court shall absolutely confirm the sale. The act provides that there shall be no period of redemption after such sale, and the sale shall be deemed to pass a good and valid title to the purchaser free from any liens or encumbrances whatsoever, “except such liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff’s deed.” Therefore, it is apparent that there is an extended period of time of no less than 60 days from the time of the *223 sale to the date on which the successful purchaser can receive a deed. It is likewise clear that he takes the property subject to any and all liens and encumbrances which are not specifically divested by the act.
Section 605 of the act provides that the bureau shall fix the upset price to be realized at the sale of any property which shall constitute the sum of the tax liens of the Commonwealth, the amount of the claim absolute and interest thereon on which the sale is being held, the amount of any other tax claim or tax judgment due on such property and interest on the judgment to the date of sale, the amount of all accrued taxes, including taxes levied for the current year, the amount of municipal claims against the property and the record costs and costs of sale. It is further provided in this section that no sale of property shall be made by the bureau unless a bid equal to the upset price is made.
Section 609 provides that every such sale shall convey title to the property under and subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent, and Commonwealth tax lien not included in the upset price. Therefore, once the upset price is set and established, all other liens on the property then existing remain on the property and are not divested by virtue of the sale. The purchaser at the sale must bid no less than the upset price or the sale cannot be held. Therefore, the prospective purchaser at such a sale is on notice of what the upset price is and what he must bid in order to acquire the property successfully, and he is further on notice of the liens then outstanding. Therefore, at that moment, he can make a rational determination of what he wishes to bid knowing *224 what he is purchasing. If he is to be subjected to liens subsequent to the time that he makes that bid, and before the time of confirmation and the receipt of a deed under section 608, then essentially, he is purchasing a pig in a poke. The purchaser at an upset sale is required to pay to the bureau the entire purchase price on the date of the sale, no later than one hour before the close of business. See section 606. Therefore, as of that date, on the date of the sale, he has put his money up, and it is only reasonable that at that moment he knows what he has purchased. Of course, if the sale is invalidated as a result of successful objections or exceptions by the property owner under section 607, then he is permitted to receive his money back. However, that won’t happen if subsequent liens essentially exhaust whatever equity he may think he has in the property. Of course, in this case, there was a foreclosure by a mortgage not divested. However, he had notice of that and faced that eventuality with his eyes open. He did not anticipate a subsequent lien at the time that he made his bid and put up his money.
For the foregoing reasons, it is ordered and directed that the proceeds held by the sheriff with respect to the asserted lien of the Fidelity Bank shall be distributed to petitioner herein.
ORDER
And now, October 25, 1990, it is hereby ordered that the proceeds held by the sheriff by virtue of his schedule of proposed distribution in this matter on behalf of the lien of the Fidelity Bank shall be distributed to the petitioner herein.